UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **PHILADELPHIA INDEMNITY INSURANCE COMPANY,** | |
| *Plaintiff,* | Civil No.: 1:23-cv-00300-JRR |
| v. | |
| **THE COUNCIL OF UNIT OWNERS OF PARTRIDGE COURTS CONDOMINIUM, INC.,** | |
| *Defendant.* | |

**MEMORANDUM OPINION**

This matter comes before the court on Defendant The Council of Unit Owners of Partridge Courts Condominium Inc.'s ("Partridge") Motion to Dismiss. (ECF No. 6; "the Motion.") The court has reviewed all papers. No hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, the Motion will be denied.

**I.   BACKGROUND**[1]

Plaintiff Philadelphia Indemnity Insurance Company ("PIIC") filed the instant action against Partridge seeking a declaratory judgment pursuant to 28 U.S.C. § 2201(a) as to questions concerning their rights, duties, and obligations under a Property Coverage Policy ("the Policy") issued by PIIC to Partridge. (ECF No. 1 ¶¶ 1, 13.)

On March 8, 2021, Partridge submitted a claim to PIIC asserting that a storm caused damage to the roofs of twenty-two condominium buildings in Columbia, Maryland. (ECF No. 1 ¶ 6.) Partridge maintains that the twenty-two roofs sustained storm damage and require

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint. (ECF No. 1.)

replacement. *Id.* ¶ 12. PIIC investigated the claim and concluded that the storm damage was minimal and repairable, and that condition of the roofs about which Partridge complained was otherwise the result of the age of the roofs and general lack of maintenance. *Id.* ¶ 9. Partridge asserts that the replacement cost for the roofs is $1,158,464.64. *Id.* ¶ 12. PIIC estimates the storm-related damage and associated repair cost to be $37,954.09. *Id.* ¶ 10. PIIC asserts that the Policy coverage does not extend to the damage/condition of the roofs not caused by the storm. (ECF No. 1 ¶ 40.)

The Policy provides in relevant part:

> **PROPERTY COVERAGE FORM**
>
> **A. Coverage**
> We will pay for direct physical "loss" to Covered Property caused by or resulting from any of the Covered Causes of Loss.
>
> **CAUSES OF LOSS FORM**
> **A. Covered Causes of Loss**
>
> **Covered Causes of Loss** means Risk of Direct Physical Loss unless the **"loss"** is:
>
> **1.** Excluded in Section **B. Exclusions.**
> \*\*\*
>
> **B. Exclusions**
> \*\*\*
>
> **2.** We will not pay for **"loss"** caused by or resulting from any of the following:
> \*\*\*
> **d. (1)** Wear and tear;
> **(2)** Rust, corrosion, fungus, decay, deterioration, spoilage, contamination, hidden or latent defect or any quality in property that causes it to damage or destroy itself;
> \*\*\*
> **3.** We will not pay for **"loss"** caused by or resulting from any of the following. But if **"loss"** by a Covered Cause of Loss results, we will pay for that resulting **"loss."**
> \*\*\*

> **c.** Faulty, inadequate or defective:
> ***
>    **(2)** Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>    **(3)** Materials used in repair, construction, renovation or remodeling; or
>    **(4)** Maintenance;
>
> Of part or all or any property on or off the described premises.

(ECF No. 1 ¶ 15.)

On February 3, 2023, PIIC filed the Complaint (ECF No. 1) asserting a single cause of action for declaratory judgment. *Id.* at 4. The prayer for relief seeks: (i) an order declaring that PIIC does not have a duty to pay for the replacement of the twenty-two roofs at the insured premises; and (ii) any other relief this court deems just and proper. *Id.* at 5. Partridge moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   LEGAL STANDARD

### Federal Rule of Civil Procedure 12(b)(6)

"'The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling [her] to relief." *Edwards*, 178 F.3d at 244 (*citing Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

3

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist. LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

### III. ANALYSIS

#### A. Consideration of Exhibits

As an initial matter, Partridge attaches six exhibits to its Motion: Exhibit 1 – Policy Excerpts (ECF No. 6-3); Exhibit 2 – Insurer Estimate (ECF No. 6-4); Exhibit 3 – Policyholder Estimate (ECF No. 6-5); Exhibit 4 – Attempted Repairs (ECF No. 6-6); Exhibit 5 – Appraisal Demand (ECF No. 6-7); and Exhibit 6 – Appraisal Response (ECF No. 6-8.)

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint. A court may consider documents attached to the complaint, as well as documents attached to a motion to dismiss, if the documents are "integral to the complaint and their authenticity is not disputed." *Heroman v. Teaching Strategies, LLC,* No. 8:19-CV-2098-PWG, 2020 WL 6889259, at *3 (D. Md. Nov. 24, 2020). "An integral document

is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found. Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

Exhibit 1—the Policy excerpt—is integral to the Complaint because the Complaint expressly references and quotes the Policy (ECF No. 1 ¶ 15); and PIIC's asserted rights/entitlement that form the basis for the action arise from the Policy. Therefore, the court will consider Exhibit 1 without converting the Motion to one for summary judgment. In contrast, Exhibits 2 through 6—the insurer estimate, the policyholder estimate, documentation of attempted repairs, the appraisal demand, and the appraisal response—are neither referenced in, nor integral to, the Complaint, as they do not give rise to any legal right or entitlement asserted by PIIC. Accordingly, the court will not consider Exhibits 2 through 6 for purposes of resolving the Motion.

B. **12(b)(6) Motion**

Partridge seeks dismissal of the declaratory judgment claim on the basis that it is premature until the appraisal process is complete. (ECF No. 6-1 at 5-6.) Specifically, Partridge maintains that "the present controversy is not ripe for a decision, and may never become ripe for decision, because the disputed facts about the appropriate method to repair the storm damage from the November 15, 2020 [storm] ought to be subsumed in the decision of the appraisers setting the amount of loss attributed to the storm occurrence." *Id.* at 6.

The Declaratory Judgment Act (the "Act") affords district courts the ability to declare the rights and obligations of parties where doing so will help the parties by resolving an "actual

controversy" then in existence. 28 U.S.C. § 2201(a). As an enabling statute, the Act confers wide latitude and discretion upon the court in determining "whether to assert jurisdiction over declaratory judgment actions." *United Capitol Inc. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). For a court to exercise jurisdiction under the Act, a "case or controversy" must exist within the meaning of Article III of the United States Constitution (the "constitutional inquiry") and the court must be "satisfied" that doing so is sensible (the "prudential inquiry"). *White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167-68 (4th Cir. 1990) (providing that "[i]t must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.") (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)). The Supreme Court in *Aetna Life Insurance Company v. Haworth* explained the test of justiciability as follows:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising that the law would be upon a hypothetical state of facts. Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required.

300 U.S. 227, 240-41 (1937) (internal citations omitted).

The court finds *Wausau Ins. Co. v. Herbert Halperin Distribution Corporation* instructive. 664 F. Supp. 987 (D. Md. 1987). There, the plaintiff insurance company sought a declaratory

6

judgment regarding certain questions arising under the insurance policy it issued to the defendants. *Id.* at 987. The *Wausau* court outlined the dispute between the parties as follows:

> On or about June 13, 1986, the Insureds discovered that a portion of the roof of an insured building had collapsed. After conducting an inspection an independent consulting firm concluded that the framing members and plywood at the collapsed areas were rotten and decayed by fungus and mold due to long-term exposure to water. Wausau offered to pay $56,833.59 as satisfaction of the Insureds' claims. This sum represented Wausau's evaluation of the immediate and direct damage from the partial collapse of the roof. It is Wausau's position that it is not liable to the Insureds for any greater amount because of exclusions in the subject policy for damage caused by faulty design, construction or operational deterioration and wear and tear. The Insureds contend, on the other hand, that Wausau is liable for a much greater amount than it has offered because it is structurally impossible to repair one area of the roof without repairing and replacing the entire roof.

*Id.* at 988.

After the defendants rejected the plaintiff's offer and sought the appointment of appraisers pursuant to the policy's appraisal clause, the plaintiff filed suit. *Wausau Ins. Co.*, 664 F. Supp. at 988. The defendants asked the court to stay or dismiss the action and refer the dispute to an appraiser. *Id.* at 987-88. In denying the motion, the *Wausau* court reasoned:

> The Insureds contend that the only matters not subject to appraisal are those external to the actual occurrence such as issues of fraud in the insurance application, failure to cooperate, non-compliance with policy modification clauses, lack of ownership of the property, lack of an insurable interest, lack of jurisdiction, the agent's lack of authority to issue the policy and the like. Although courts have held that such matters are not subject to appraisal, it does not follow, as the Insureds argue, that these are the only matters not subject to appraisal. On the other hand, Wausau's contention that the only issue subject to appraisal is the monetary valuation of items which the parties agree are covered by the policy is likewise erroneous. To so read the appraisal clause would be to make the term "the amount of loss" simply redundant to the term "the actual cash value."
>
> The question is far from an easy one, and no clear answer is presented by the authorities. However, the Court concludes that, at

7

> least as the issues have now been framed by the parties, their dispute is not one subject to appraisal. An example of an "amount of loss" question is presented by *Aetna Casualty & Surety Co. v. Insurance Commissioner, supra.* There, one of the primary questions in dispute was whether or not the insured was attempting to recover under the policy not a loss which had been suffered as a result of the occurrence but improvements to the property which had not before existed. Another example is suggested by the instant case itself. If Wausau was disputing that as a factual matter a larger area than that immediately damaged by the occurrence had to be repaired in order to repair the immediate damage itself, this would constitute an "amount of loss" question. However, the Insureds have asserted (and Wausau apparently does not contest) that this fact is not in genuine dispute.
>
> The Insureds cite *Erickson v. Farmers Mutual Ins. Co.*, 311 NW 2d 579 (ND 1981) for the proposition that where an insurer admits causation, any remaining matters in controversy concerning the extent of loss are subject to appraisal. The fallacy in this argument is that although it appears that Wausau is not factually disputing the consequences of the occurrence, it is contesting the issue of legal "causation" on the basis that the policy exclusions apply so as to limit the scope of coverage. This issue is one of contract interpretation which is within the competence of the Court, not an appraiser, to resolve. Of course, to the extent that issues of design and construction relating to "the amount of loss" are ultimately presented, these will be properly referable to the appraisal process.

664 F. Supp. at 988-89; *see also Council of Unit Owners of Ellicott Hills Condo. II, Inc. v. Cincinnati Ins. Co.*, No. CCB-21-2991, 2022 WL 3908555, at *3 (D. Md. Aug. 29, 2022) (providing that "[a] number of courts across the country have since favorably cited *Wausau* in holding that causation, coverage, and liability disputes remain within the jurisdiction of the court, and not the appraiser, when the appraisal clause references determination of the 'amount of loss'").

In the instant case, PIIC requests an order "declaring that PIIC does not have a duty to pay for the replacement of twenty-two roofs at the insured premises." (ECF No. 1 at 5.) Specifically, PIIC alleges that the storm did not cause the damage to all twenty-two roofs. *Id.* at 3. Instead, PIIC maintains that the damage exhibited by the roofs not affected by the storm is pre-existing and

8

caused by wear and tear, deterioration, faulty materials, faulty prior repairs, and/or lack of and faulty maintenance. *Id.* at 5. Therefore, PIIC alleges that Policy exclusions apply such that the Policy does not provide coverage for the damage exhibited by the roofs not caused by a storm. *Id.*

Partridge's position that the parties' dispute relates only to the appropriate method to repair the storm damage is unavailing. Like *Wausau*, PIIC "is contesting the issue of legal 'causation' on the basis that the policy exclusions apply so as to limit the scope of coverage." *See Wausau, supra.* As the *Wausau* court explained: "[t]his issue is one of contract interpretation which is within the competence of the [c]ourt." Indeed, PIIC seeks a declaratory judgment regarding the parties' rights, entitlements and obligations pursuant to the Policy; and Partridge notes that "[t]he appraisal panel has not been charged with including in their award any damage to the structures attributed to other potentially excluded causes of loss." (ECF No. 6-1 at 6.) Accordingly, there is a definite and concrete dispute between the parties that "relates to legal rights and obligations arising from the contracts of insurance." *Aetna Life Ins. Co.*, 300 U.S. at 242. That notwithstanding, PIIC maintains, and Partridge does not dispute, that the appraisal process has since been completed. The Motion will be denied.

IV. **CONCLUSION**

For the reasons set forth herein, by separate order, Defendant The Council of Unit Owners of Partridge Courts Condominium Inc.'s Motion to Dismiss (ECF No. 6) is denied.

/S/

_____
Julie R. Rubin
United States District Judge

November 29, 2023